UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CLEO E. ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:06-CV-410 |
| | ) | (VARLAN/SHIRLEY) |
| REXNORD INDUSTRIES, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This civil action is before the Court on defendants' Motion to Dismiss [Doc. 3], Renewed Motion to Dismiss [Doc. 9], Third Motion to Dismiss [Doc. 23][1], and plaintiff's Motion to Certify Questions of Law to the Tennessee Supreme Court. [Doc. 12.] The Court heard oral argument on these motions on May 22, 2007, and the matter is now ripe for adjudication. For the reasons set forth below, the Court will grant defendant's motions to dismiss and deny plaintiff's motion to certify.

**I.     Relevant Facts**

As the Court is required to do on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court will construe the Second Amended Complaint [Doc. 22] in the light most favorable to plaintiff, accept all well-pleaded factual allegations as true, and determine whether

---

[1]The Court notes that all of defendant's motions are only partial motions to dismiss, as they only challenge plaintiff's common law retaliatory discharge claim and plaintiff's claim of judicial estoppel.

plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003).

The plaintiff, Cleo E. Ellis ("Plaintiff"), was employed by the defendant, Rexnord Industries L.L.C. ("Defendant"), from August 10, 1987, until the involuntary termination of his employment on February 13, 2006. [Doc. 22 at ¶ 11.] At the time of termination, Plaintiff's job title was "Set-up and Operate II," which required Plaintiff to operate heavy machinery, to load steel slugs weighing as much as fifty pounds into the machinery, and to step inside the machinery to balance the weight. [*Id*. at ¶¶ 12, 15, 16.] A machine malfunction could be life threatening to anyone inside or operating the machine. [*Id*. at ¶¶ 17, 18.]

On or about December 9, 2005, Machine # 798 had mechanical problems and was repaired. [*Id*. at ¶ 13.] On Friday, February 10, 2006, Plaintiff was assigned to operate two machines, one of which was Machine # 798. [*Id*. at ¶ 14.] That same day, Plaintiff reported to his cell leader, George Barbee ("Barbee"), that Machine # 798 appeared to be malfunctioning, as its turret was not operating smoothly and was making unusual noises. [*Id*. at ¶¶ 19-21.] Barbee did not have the authority to shut down the machine, so he contacted the Business Unit Manager, Rob Hill ("Hill"). [*Id*. at ¶ 23.] Hill did not know what was wrong with the machine and ordered Plaintiff to use Machine # 798 despite Plaintiff's concerns. [*Id*. at ¶ 24.] Plaintiff refused to use Machine # 798 because he felt it was unsafe and asked that a maintenance call be placed on the machine. [*Id*. at ¶ 26.

At that point Hill contacted the Lead Man, Ricky Foster ("Foster"). [*Id*. at ¶ 27.] Plaintiff told Foster that Plaintiff thought Machine # 798 was unsafe and that Plaintiff would not operate the machine. [*Id*.] Foster reported Plaintiff's allegations that Machine # 798 was unsafe to the Human Resource Manager, Thomas Plachinski ("Plachinski"). [*Id*. at ¶ 29.] Hill and Plachinski decided to investigate the matter further, but no one was available that day to properly evaluate Machine # 798. [*Id*. at ¶ 30.] Plaintiff was allowed to work on another machine in lieu of Machine # 798. [*Id*. at ¶ 31.]

On Monday, February 13, 2006, Plaintiff reported to work and was again assigned to Machine # 798, which was in the same condition it had been in on February 10, 2006. [*Id*. at ¶¶ 32-33.] Plaintiff again refused to operate the machine because of safety concerns. [*Id*. at ¶ 34.] The Lead Man of Maintenance, Randy Baumgardner, and the Plant Project Manager, Roger Tackett, examined Machine # 798, but had differing opinions over what was causing the machine to catch and drag. [*Id*. at ¶¶ 36-37.]

Plaintiff was called into a meeting with Plachinski, Hill, and the Operations Manager, William Randolph ("Randolph"). [*Id*. at ¶ 38.] During the meeting, Plaintiff was told that he could either operate Machine # 798 or have his employment terminated for insubordination. [*Id*. at ¶ 39.] In response, Plaintiff asked for an outside company to inspect the machine or that he be allowed to perform the job of Operator rather than his current position, but both requests were denied. [*Id*. at ¶¶ 40-41.] Plaintiff's employment with Defendant was terminated at approximately 10:30 a.m. on February 13, 2006. [*Id*. at ¶ 43.]

Later that same day, an outside maintenance company was asked to perform a surface inspection of Machine # 798. [*Id*. at ¶¶ 44-45.] The outside maintenance company was unable to determine what was causing the problem without taking the machine apart, which Defendant forbade. [*Id*. at ¶¶ 45-46.] Plaintiff contacted Defendant on Tuesday, February 14, 2006, and was informed that Defendant stood by its termination decision. [*Id*. at ¶ 48.]

Soon thereafter, Plaintiff filed a complaint with the Tennessee Department of Labor and Workforce Development ("TDOL") under the Tennessee Occupational Safety and Health Act, Tenn. Code Ann. § 50-3-409 ("TOSHA").[2] [Doc. 22, Attachments 1-3.] In response to an inquiry by TDOL, Defendant's General Counsel, Patricia M. Whaley ("Whaley"), sent TDOL a letter arguing that Plaintiff was not protected under TOSHA because he did not file a TOSHA complaint prior to his termination as required by Tennessee law. [Doc. 22, Attachment 1.] Whaley also disputed the facts as presented by Plaintiff.[3] [*Id*.] TDOL later contacted Plaintiff to inform him that his complaint was being dismissed without further action by the agency. [Doc. 22, Attachment 3.] Plaintiff was advised that he had the right to file a written appeal with the TDOL Commissioner. [*Id*.]

---

[2]The Court notes that Plaintiff attached documents relating to the TOSHA investigation to his Second Amended Complaint, thus the Court can consider those documents without converting the motion to dismiss into a motion for summary judgment. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.")

[3]For the purposes of this motion, though, the Court construes all facts in the light most favorable to Plaintiff.

On October 24, 2006, Plaintiff filed the instant case. [Doc. 1.] On November 30, 2006, Defendant filed its first motion to dismiss. [Doc. 3] On December 20, 2006, Plaintiff filed his First Amended Complaint. [Doc. 7.] On January 11, 2007, Defendant filed its second motion to dismiss. [Doc. 9.] On February 5, 2007, Plaintiff filed his motion to certify questions to the Tennessee Supreme Court. [Doc. 12.] On March 5, 2007, Plaintiff was given leave to file his Seconded Amended Complaint, which was filed the same day. [Doc. 22.] On March 19, 2007, Defendant filed his third motion to dismiss. [Doc. 23.] Oral argument on the motions to dismiss and motion to certify was heard before the Court on May 22, 2007. After the hearing, the Court took all pending motions under advisement.

The three motions to dismiss all essentially the same, focusing on Plaintiff's common law retaliatory discharge claim. The third motion to dismiss also addresses the issue of judicial estoppel raised by Plaintiff in his Second Amended Complaint. The Court will address each of these claims, as well as Plaintiff's motion to certify, in turn.

**II.  Motions to Dismiss**

  A.  <u>Standard of Review</u>

Defendants have moved to dismiss the plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) should not be granted "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Trzebuckowski*, 319 F.3d at 855. While a court may not

5

grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The issue is not whether the plaintiff will prevail, but whether the claimant is entitled to offer evidence to support his or her claim. *Chapman v. City of Detroit*, 80 F.2d 459, 465 (6th Cir. 1986). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

B. <u>Common Law Retaliatory Discharge Claim</u>

In his Second Amended Complaint, Plaintiff alleges that Defendant is liable for a violation of Tennessee common law for terminating Plaintiff's employment for attempting to assert his right to a safe work environment. Plaintiff points to TOSHA, the federal Occupation Safety and Health Act of 1970 codified at 29 U.S.C. § 660 *et seq*. ("OSHA"), and the Restatement (Second) of Agency §§ 492, 493, 495, and 520 as evidence of a clear public policy promoting workplace safety evidenced by an unambiguous constitutional, statutory, or regulatory provision.

Defendant contends that Plaintiff's claim must fail because TOSHA establishes the exclusive remedy for any claim of discharge in retaliation for filing a complaint of a workplace safety violation. Specifically, TOSHA mandates that:

6

> No person shall discharge or in any manner discriminate against any employee because the employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or because of the exercise by the employee on behalf of such employee or others of any rights afforded by this chapter.

Tenn. Code Ann. § 50-3-409(a). Should an employer violate this mandate, the affected employee "may, within thirty (30) days after the violation occurs, file a complaint with the commissioner of labor and workforce development alleging such discrimination." Tenn. Code Ann. § 50-3-409(b)(1).

Defendant points out that TOSHA was enacted in 1972, and then amended in 1974 to add a provision prohibiting the discharge of an employee for making an occupational safety complaint as well as a remedial scheme for such discrimination. 1974 Tenn. Pub. Acts 466-67. In comparison, the Tennessee Supreme Court established a common law claim for retaliatory discharge in 1984. *Clanton v. Cain Sloan Co.*, 677 S.W.2d 441 (Tenn. 1984). Defendant argues that the Tennessee Supreme Court has held that "where a common law right exists, and a statutory remedy is subsequently created, the statutory remedy is cumulative unless expressly stated otherwise," but when "a statute creates a new right and prescribes a remedy for its enforcement, then the prescribed remedy is exclusive." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1992). Therefore, Defendant claims, the statutory remedy established by TOSHA predates the common law claim of retaliatory discharge, and thus, under *Hodges*, TOSHA provides the exclusive remedy.

Defendant's analysis is correct, as the *Hodges* court clearly established that when a statutory remedy predates a common law remedy, the statutory remedy is exclusive. Thus, the Court must determine whether Plaintiff's claim falls under the remedy established by TOSHA. If so, then TOSHA is the exclusive remedy and Plaintiff's common law claim must fail. If not, however, then he may state a claim under the Tennessee common law of retaliatory discharge.

As the Court noted above, Plaintiff alleges that Defendant is liable for a violation of Tennessee common law for terminating Plaintiff's employment for attempting to assert his right to a safe work environment. Thus, if TOSHA protects employees from discharge by their employer for attempting to assert a right to a safe work environment, then Plaintiff's common law claim would be pre-empted under *Hodges*. TOSHA, by its plain language, does protect such rights. One of the purposes of TOSHA is to provide "that employers and employees have separate but dependent responsibilities and **rights** with respect to achieving **safe and healthful working conditions**." Tenn. Code Ann. § 50-3-102(b)(2) (emphasis added). Additionally, the remedies established by TOSHA apply to "the exercise by the employee on behalf of such employee or others of any rights afforded by this chapter." Tenn. Code Ann. § 50-3-409(a). Thus, by the plain language of TOSHA, any attempt by an employee to exercise the rights afforded by TOSHA, including an employee's general right to a workplace that is as safe as reasonably possible, is protected by TOSHA. Given that TOSHA covers the rights Plaintiff attempted to exercise, it follows that, under *Hodges*, TOSHA establishes the exclusive remedy for any breach of those rights. Accordingly, the

8

Court finds that TOSHA establishes the exclusive remedy for the alleged violation of Plaintiff's right to a safe workplace and Plaintiff's common law claim of retaliatory discharge must fail.

### C. Judicial Estoppel

However, while the Court finds that TOSHA does provide the exclusive remedy in this instance, Plaintiff has also alleged that Defendant should be estopped from arguing that TOSHA provides the exclusive remedy. Defendant contends that it has not taken a contrary position and that any claim of judicial estoppel should be denied.

The doctrine of judicial estoppel bars a party from asserting a position that is contrary to one the party has asserted under oath in a prior proceeding, where the prior court adopted the contrary position "either as a preliminary matter or as part of a final disposition." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990). Judicial estoppel is an "equitable doctrine meant to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Id*. Judicial estoppel, however, should be applied with caution to "avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement." *Id*.

Plaintiff contends that Defendant, in the instant matter, has taken a position contrary to that taken before the TDOL. Plaintiff relies on the correspondence between the TDOL and Defendant in support of his claim of judicial estoppel. Specifically, in her letter of April 3,

9

2006, Whaley stated that "[f]irst and foremost, Rexnord denies that Mr. Ellis has engaged in protected activity under the statute because he never filed a complaint with TOSHA prior to his termination. Therefore, the complaint should be dismissed as legally insufficient." [Doc. 22, Attachment 1.] Whaley's letter was prompted by a letter dated March 13, 2006, sent to Defendant by the TDOL.[4] In that letter, the TDOL indicated that "Mr. Ellis alleges that his termination is a result of his complaint about having to operate the Okuma LC30 turning machine that had an unsafe turret." [Doc. 4, Attachment 2.]

Thus, Defendant's assertion that Plaintiff was not protected under TOSHA was in response to a claim that Plaintiff was terminated because of his complaint. In the instant suit, Plaintiff now attempts to assert that he was fired for asserting his right to a safe workplace, not for having made a complaint. In light of Plaintiff's apparent change in position, Defendant offers its current arguments, that TOSHA was Plaintiff's exclusive remedy. Given the change of position by Plaintiff, the Court does not find that Defendant has impermissibly taken a contradictory position. The Court further finds that judicial estoppel is not appropriate in this case. Having ruled that TOSHA provides the exclusive remedy for Plaintiff's claim, and having ruled that judicial estoppel is not appropriate in this case, the

---

[4]The Court notes that Plaintiff did not attach this letter to his Second Amended Complaint. However, the Sixth Circuit has held that a court may also consider "other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice" without converting the motion to dismiss into a motion for summary judgment. *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005). The Court finds that the March 13, 2006, letter from the TDOL is integral to request for judicial estoppel in Plaintiff's Second Amended Complaint. The Court further finds that, as a document from the TDOL, the letter is also a public record. Thus the Court need not convert this portion of the motion to dismiss into a motion for summary judgment.

10

Court finds Defendant's motions to dismiss [Docs. 3, 9, 23] to be well taken and the same are hereby **GRANTED**.

## III.     Motion to Certify

Plaintiff moves the Court to certify a question of law to the Tennessee Supreme Court to resolve the issues raised by Defendant's motions to dismiss. [Doc. 12]  Given that the Court has resolved all issues raised by the motions to dismiss, there is no need to certify any questions to the Tennessee Supreme Court.  Accordingly, Plaintiff's motion to certify [Doc. 12] is hereby **DENIED**.

## IV.     Conclusion

For the reasons set forth herein, Defendant's motions to dismiss [Docs. 3, 9, 23] are hereby **GRANTED** and Plaintiff's common law retaliatory discharge claim and request for judicial estoppel are **DISMISSED with prejudice**.  Plaintiff's motion to certify [Doc. 12] is hereby **DENIED**.  The Court notes that on August 28, 2007, Plaintiff filed a Motion for Leave to File Supplemental Brief.  [Doc. 27]  Given the Court's ruling, Plaintiff's motion [Doc. 27] is hereby **DENIED**.  Plaintiff's remaining claims will proceed toward trial.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE