UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| CLEO E. ELLIS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:06-CV-410 |
| | ) | (VARLAN/SHIRLEY) |
| REXNORD INDUSTRIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Cleo E. Ellis ("Plaintiff Ellis") filed this civil action against Defendant Rexnord Industries, LLC, ("Defendant Rexnord") seeking federal relief under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff Ellis also sues under the Tennessee Humans Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* [*See* Doc. 22.] This case is before the Court on Defendant Rexnord's Motion for Summary Judgment. [Doc. 48.] In the relevant filings, the parties dispute whether Plaintiff Ellis can establish the prima facie case or show pretext for his claims of racial discrimination. [*See* Docs. 49, 54, 56, 58, 60, 61.]

The Court has carefully considered Defendant Rexnord's motion, the parties' briefs, and other supporting materials. [Docs. 48, 49, 50, 51, 52, 53, 54, 56, 58, 60, 61.] For the reasons set forth herein, the Court will deny Defendant Rexnord's motion for summary judgment.

## I. BACKGROUND

Beginning in August of 1987, Plaintiff Ellis, an African-American, was employed by Defendant Rexnord and worked in different positions over the years, including as a complex operator and setup and as a material handler. [Doc. 50-2 at 3.] In 1996, Plaintiff Ellis transferred to Defendant Rexnord's Set Up and Operate, Numerically Controlled Group, and was working in that department as a set-up and operator in February of 2006. [*Id.* at 4, 14, 21.] There were several machines in this department, and workers, like Plaintiff Ellis, would rotate between the various machines on a daily basis. [*Id.* at 7.] Machine assignments were made each day depending on what machines were running on that particular day. [Doc. 50-3 at 2.]

On February 10, 2006, Plaintiff Ellis was assigned to Machine 798. [Doc. 50-2 at 6-7.] After noticing that the machine's upper turret was hanging, falling, and making a popping noise, Plaintiff Ellis turned the machine off and notified his cell leader, George Barbee ("Mr. Barbee"). [*Id.*] Previously in December of 2005, Machine 798 required maintenance and was later put back into service the same month. [*Id.* at 7.] After speaking with Mr. Barbee, Plaintiff Ellis's supervisor, Rob Hill ("Mr. Hill"), was then notified of Plaintiff Ellis's concerns with the safety of Machine 798. [*Id.* at 5, 8.] After Mr. Hill allegedly informed him that Machine 798 needed to be operated that day, Plaintiff Ellis allegedly reiterated his safety concerns and his belief that maintenance should look at the machine. [*Id.* at 9.] Mr. Hill instead chose to have Plaintiff Ellis switch machines for the rest of the day with Ricky Foster ("Mr. Foster").

On February 13, 2006, Operations Manager Bill Randolph ("Mr. Randolph"), Maintenance Cell Leader Randy Bumgardner ("Mr. Bumgardner"), and Project Manager Roger Tackett ("Mr. Tacket") allegedly inspected Machine 798 and determined that it was safe for operation despite the popping noise. [Docs. 50-5 at 2; 52 at 1; 53 at 1.] Later on the same day, Plaintiff Ellis was again assigned to Machine 798 by Mr. Hill. [Doc. 50-2 at 10.] After expressing his safety concerns to Mr. Foster and later Mr. Hill, Plaintiff Ellis was informed by Mr. Hill that "experts" had looked at the machine and that he needed to setup and run the machine or go home. [*Id.*] Plaintiff Ellis then allegedly "kept asking" Mr. Hill "to have maintenance fix the problem that the machine was having" and sought to speak to the "experts" who had examined the machine. [*Id.* at 10-11.]

Mr. Hill then allegedly told Plaintiff Ellis to meet with Tom Plachinski ("Mr. Plachinski"), Human Resources Manager. [*Id.* at 11.] After Mr. Plachinski said he would speak with Mr. Hill and then get back to him, Plaintiff Ellis returned to work. [*Id.*] While Plaintiff Ellis was working on another machine, Mr. Bumgardner and Mr. Tackett spoke to him about Machine 798. [*Id.* at 11-12.] According to Plaintiff Ellis, they never told him that it was safe to run Machine 798 and that they only analyzed the problem with the machine. [*Id.* at 12.]

While working on another machine, Plaintiff Ellis was then told to meet with Mr. Hill, Mr. Plachinski, and Mr. Randolph. [*Id.*] After allegedly reiterating his concerns with the safety of Machine 798 at the meeting, Mr. Hill allegedly informed Plaintiff Ellis that he needed to set up and run the machine or go home. [*Id.*] Mr. Plachinski then informed

Plaintiff Ellis that he could be terminated for insubordination if he did not operate Machine 798. [*Id.*] Plaintiff Ellis then allegedly asked if he could be allowed to keep his job if he moved to another machine, and he was allegedly told that he had to follow instructions and operate Machine 798. [*Id.* at 15.] Plaintiff Ellis also allegedly mentioned that he would operate the machine if an R.O. Deaderick technician would look at the machine and tell him that Machine 798 was safe. After further requests to return to Machine 798, Plaintiff Ellis refused because he was uncomfortable with running the machine and clocked out when Mr. Hill told him to either run Machine 798 or return home. [*Id.* at 16.] Plaintiff Ellis was instructed to call back the next day. [Doc. 54-3 at 12.]

Afterwards, on February 13, 2006, a request was made to R.O. Deaderick to inspect Machine 798. [Docs. 54-3 at 15; 54-13.] The technician from R.O. Deaderick found "no imminent safety concerns presented themselves during this inspection and subsequent discussion." [Doc. 54-13.] According to Mr. Hill, the technician was called to "make sure we made the right decision." [Doc. 54-3 at 11.] If the technician had confirmed Plaintiff Ellis's safety concerns, then Mr. Hill claims that Plaintiff Ellis would have been told to come back to work because "we made the wrong decision" despite his insubordination. [*Id.* at 12.] On February 14, 2006, Plaintiff Ellis called Mr. Plachinski who informed that the decision from the previous day stood. [Doc. 50-2 at 16.] He was not informed of the inspection by the technician from R.O. Deaderick on the previous day. [Doc. 54-3 at 12.]

4

## II. ANALYSIS

### A. Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Id.* at 249. The judge does not weigh the evidence, judge the credibility of witnesses, nor determine the truth of the matter. *Id.* Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words,

5

there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

## B. Racial Discrimination

In the present case, Plaintiff Ellis claims that his termination from the employment of Defendant Rexnord constitutes racial discrimination under 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and the Tennessee Humans Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* ("THRA"). In the absence of direct evidence of racial discrimination, as in the present case, a plaintiff presents circumstantial evidence through a burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As previously recognized by the Sixth Circuit, the burden-shifting framework applies to statutory causes of action under Title VII, Section 1981, and the THRA. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). Thus, the Court will address all of Plaintiff Ellis's racial discrimination claims together since the analysis for each is identical.

### 1. Prima Facie Case

To establish a prima facie case for a racial discrimination claim, a plaintiff must establish that he (1) is a member of a protected group; (2) suffered an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person outside of the protected class or was treated differently from similarly situated members of the unprotected class. *See id.* (citing *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 728-29 (6th Cir. 1999)).

6

In the present case, Defendant Rexnord contends that summary judgment is proper because Plaintiff Ellis cannot establish the fourth of these elements.

As evidenced by the parties' summary judgment filings, Plaintiff Ellis attempts to satisfy the "similarly situated" element by claiming that he was treated differently from similarly situated Caucasian employees.[1] In support of this argument, Defendant contends that Plaintiff Ellis was treated no differently than other Caucasian employees in his department who were required to run Machine 798 despite the popping noises or safety concerns. Plaintiff Ellis responds that he has satisfied the similarly situated element because Carl Wood ("Mr. Wood"), a Caucasian employee, was not terminated even though he, like Plaintiff Ellis, refused to perform work as instructed by his superior. Thus, the parties disagree on who constitutes a "similarly situated" employee for comparison purposes in this case.

To be deemed "similarly situated," the Sixth Circuit has recognized that "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). The "appropriate test" is to "look at those factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects."

---

[1] Plaintiff Ellis has not contended nor identified evidence that establishes that he was replaced by a member of the unprotected class, the other method of satisfying the fourth prima facie element.

7

*Jackson v. FedEx Corporate Servs.*, 518 F.3d 388, 394 (6th Cir. 2008) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *see also Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 458 (6th Cir. 2004) ("In employment discrimination cases, the plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly situated;' rather, this court has held that the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'") (citations omitted).

In the present case, Defendant Rexnord seeks to compare Plaintiff Ellis to other non-minority employees in his department while Plaintiff seeks to compare himself with Mr. Wood, a Caucasian employee who was not terminated despite disobeying a superior's orders and leaving work early. As an initial matter, the Court notes that the "similarly situated" inquiry focuses on "individuals with whom the *plaintiff* seeks to compare his/her treatment." *Mitchell*, 964 F.2d at 583 (emphasis added). Thus, the Court will focus the prima facie "similarly situated" inquiry on the individual with whom Plaintiff seeks to compare himself, namely, Mr. Wood.

In June of 2005, Mr. Wood refused to work with another employee, Brian Harvey ("Mr. Harvey") and, instead, chose to return home rather than work with Mr. Harvey. [Doc. 54-4 at 3.] As a result of his actions, Defendant Rexnord suspended Mr. Wood for two days. [Doc. 54-6 at 4-5.] According to Plaintiff Ellis, the incident involving Mr. Wood sufficiently satisfies the similarly situated employee element. Defendant Rexnord contends that the

8

comparison to Mr. Wood fails because (1) they had different supervisors and (2) there are differentiating circumstances in these cases.

To the extent Defendant Rexnord relies on the mere fact that Mr. Wood and Plaintiff Ellis had different direct supervisors, requiring equivalence of supervisors to establish similarity has never been recognized in the Sixth Circuit. *See Gibson v. Shelly Co.*, No. 07-3009, 2008 WL 3876432, at *10 (6th Cir. Aug. 19, 2008). While the Sixth Circuit recognized in *Mitchell*, 964 F.2d at 583, that dealings with the same supervisor was a relevant factor in disparate discipline cases, the Sixth Circuit later clarified that courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovich*, 154 F.3d at 352. In other words "the 'same supervisor' criterium has never been read as an inflexible requirement." *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 479 (6th Cir. 2003); *see also Gibson*, 2008 WL 3876432, at *10 (noting that a mere "difference in supervisors . . . does not make the employees dissimilarly situated").

In the present case, there is evidence that Mr. Plachinski, Human Resources Manager, was involved in both the discipline of Mr. Wood and Plaintiff Ellis. In the case of Mr. Wood, Mr. Plachinski spoke to him after he returned to work and imposed the two-day suspension during their meeting. [Doc. 54-6 at 4.] Likewise, it was Mr. Plachinski who informed Plaintiff Ellis that his conduct constituted insubordination and termination could result and later, over the phone, told him that the termination decision stood. [Doc. 50-2 at 12, 16.] Because Mr. Plachinski imposed the discipline decision in Mr. Wood's case, he

9

would have been "well-aware of the discipline meted out" to Mr. Wood when the termination decision regarding Plaintiff Ellis was finalized. *Seay*, 339 F.3d at 480. In light of Mr. Plachinski's involvement as a decision-maker in both cases, the Court will not grant summary judgment on the basis that Plaintiff Ellis and Mr. Wood had different direct supervisors.

Defendant Rexnord also contends that Mr. Wood is not sufficiently "similarly situated" for Plaintiff Ellis to establish his prima facie case because there are "differentiating or mitigating circumstances" that distinguish the conduct of Plaintiff Ellis and Mr. Wood. *Mitchell*, 964 F.2d at 583. More specifically, Defendant Rexnord points to (1) Mr. Wood's single refusal compared to Plaintiff Ellis's repeated refusals to work and (2) Mr. Wood's eventual willingness to work with Mr. Harvey as compared to Plaintiff Ellis's steadfast refusal to operate Machine 798 in its present state. Plaintiff Ellis counters that he, like Mr. Wood, only engaged in one act of insubordination since his only act was refusing to operate Machine 798. Plaintiff Ellis also contends that Mr. Wood was never required to work with Mr. Harvey again while he was assigned to Machine 798 again on February 13, 2006.

After careful consideration, the Court finds that there is a genuine issue of material fact as to whether distinguishing circumstances render Mr. Wood insufficiently "similarly situated" to Plaintiff Ellis for prima facie purposes. Defendant Rexnord's "Code of Conduct" defines "insubordination" as "[r]efusal to obey orders as issued by foreman, general foreman, or the company. Refusal to perform assigned work." [Doc. 54-8.] Under this definition, both Plaintiff Ellis and Mr. Wood committed insubordination by refusing to perform assigned

10

work by their superiors. Though Defendant Rexnord contends that Plaintiff Ellis committed the more serious act of insubordination, the evidence when viewed in a light most favorable to Plaintiff Ellis could be construed as showing Mr. Wood's insubordination as equally if not more serious in nature. For instance, Mr. Wood abruptly left work after one exchange with his supervisor, Gary Atwater ("Mr. Atwater"), while Plaintiff Ellis first discussed his concerns with Mr. Hill and others and only left work after being directed by Mr. Hill to do so. [Docs. 50-2 at 16; 54-6 at 3-4.] Thus, even though Mr. Wood verbally refused his superior's instructions a fewer number of times than Plaintiff Ellis, he arguably committed an equally if not more serious act of insubordination by immediately leaving work after initially refusing his work assignment. While there is other evidence supporting Defendant Rexnord's contention of distinguishing circumstances, such as Mr. Wood relenting in his refusal to work with Mr. Harvey, the Court finds that it is for the finder of fact to determine whether such evidence sufficiently distinguishes the conduct of Mr. Wood from that of Plaintiff Ellis in light of all the evidence.

### 2. Pretext

Because certain prima facie elements have not been disputed or are subject to genuine issues of material fact, the Court continues onto the next step under the burden-shifting framework. A defendant must come forward with a legitimate, non-discriminatory reason for its action. *See Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006). In the present case, Defendant Rexnord has proffered such a reason, namely, Plaintiff Ellis's refusal to perform his assigned work of operating Machine 798.

11

Because Defendant Rexnord has satisfied its burden, Plaintiff Ellis must prove that Defendant's proffered nondiscriminatory reason was actually a pretext to hide unlawful discrimination. *See Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). Defendant Rexnord contends that Plaintiff Ellis cannot establish pretext because the evidence he relies upon has no connection to race discrimination. A plaintiff may establish pretext by showing: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the employer's action; or (3) the proffered reasons were insufficient to motivate the employer's action. *See id.* (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). The Court notes that evidence produced to support the prima facie case may, but will not necessarily, suffice to show a genuine issue of material fact concerning pretext. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 533 (6th Cir. 2007).

As an initial matter, the Court finds that Plaintiff cannot prevail under the first showing of pretext. The first showing "consists of evidence that the proffered bases for the plaintiff's discharge never happened." *Manzer*, 29 F.3d at 1084. In *Jones v. Potter*, a plaintiff could not prevail under the first showing when he was terminated for admitted conduct that fell within his employer's zero-tolerance policy against workplace violence. 488 F.3d 397, 406-07 (6th Cir. 2007). In the present case, Plaintiff Ellis concedes that he refused to operate Machine 798 despite being ordered to do so by Mr. Hill, which constitutes insubordination under Defendant Rexnord's "Code of Conduct." [*See* Docs. 50-2 at 10, 11, 12, 13, 14, 15, 16; 54-8.] Because Plaintiff Ellis refused to perform assigned work and Defendant Rexnord's "Code of Conduct" expressly states that an act of insubordination "may

12

result in immediate discharge," there is a basis in fact for Defendant Rexnord's legitimate, non-discriminatory reason for terminating Plaintiff Ellis. [Doc. 54-8.]

The third showing of pretext ordinarily consists of evidence that other employees, particularly employees not in the protected class, were not subject to an adverse employment action even though they engaged in substantially identical conduct to that which the employer contends motivated a defendant's actions toward a plaintiff. *Manzer*, 29 F.3d at 1084. The Sixth Circuit has previously noted that although a plaintiff is "able to raise a genuine issue of material fact by showing that at least some similarly situated employees were treated more favorably, the fact that some were also treated identically . . . indicates that his conduct was 'sufficient' to motivate his firing." *Jones*, 488 F.3d at 407. In the present case, Plaintiff Ellis has presented evidence that Mr. Wood was not terminated even though he also refused to comply with his supervisor's orders. Though Defendant Rexnord has presented evidence that other employees in Plaintiff Ellis's department were also required to run Machine 798, the Court notes that the third showing "consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer*, 29 F.3d at 1084. Because the other employees in the department did not refuse to operate Machine 798, they did not engage in "substantially identical conduct" as Plaintiff Ellis. Notably, Defendant Rexnord has not identified to the Court evidence of other employees who were fired for engaging in insubordination or other "substantially identical conduct," which would be sufficient to overcome the third showing as contemplated in *Jones*,

13

488 F.3d at 407. Thus, summary judgment will be denied since Plaintiff Ellis has sufficiently established pretext under the third showing when viewing the evidence in a light most favorable to Plaintiff.

Because the third showing of pretext has been satisfied for summary judgment purposes, it is unnecessary for the Court to determine whether Plaintiff Ellis has also sufficiently established pretext under the second showing, namely, that the proffered reason did not actually motivate Defendant Rexnord's action. Nevertheless, the Court takes this opportunity to note that to the extent Plaintiff Ellis relies on prior incidents of "different treatment" and other evidence, it is his burden to show pretext for unlawful race discrimination, not pretext that masks other motivations. *Jones*, 488 F.3d at 408. In other words, evidence will not support a showing of pretext when it has not been linked in any way to unlawful race-based discrimination as opposed to some neutral animus or reason. *Knox*, 375 F.3d at 457.

### III. CONCLUSION

For the reasons set forth herein, Defendant Rexnord Industries, LLC's motion for summary judgment [Doc. 48] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE